## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

AUSTIN KERR,
     *Plaintiff,*

     v.                                          No. 3:19-cv-988 (VAB)

WARDEN ROACH, WARDEN
MULLIGAN, LIEUTENANT
DELPESCHIO, CAPTAIN OGANDO,
LIEUTENANT QUINTANA, C.T.O. FIORE,
C.O. THOMAS, C.O. STONE, C.O. TYLER,
C.O. POWELL, C.O. TANSKI, C.O.
SARTORI, C.O. FAURIER, & C.O.
ROCKCLIFFE,
     *Defendants.*

## SECOND INITIAL REVIEW ORDER

On June 25, 2019, Austin Kerr  ("Plaintiff"), *pro se* and currently in the custody of the

Department of Correction ("DOC") at the Corrigan-Radgowski Correctional Institution in

Uncasville, Connecticut, filed a Complaint under 42 U.S.C. § 1983, concerning an incident in

which he was allegedly pepper sprayed at the MacDougall-Walker Correctional Institution

("MacDougall-Walker") on March 1, 2019.

Mr. Kerr originally named five employees who worked at MacDougall-Walker: Warden

Hines, Captain Ogandi, Captain Black, Lieutenant Delpeschio, and Correction Officer Stone.

Compl., ECF No. 1 (June 25, 2019).

On July 19, 2019, Mr. Kerr filed a document entitled "Amended Complaint" that attached

exhibits, but contained no factual allegations. Am. Compl., ECF No. 8 (July 19, 2019).

On February 3, 2020, Mr. Kerr filed another amended complaint ("Second Am.

Compl."), which alleged facts concerning the pepper spraying incident on March 1, 2019, but

named several new defendants in the complaint. Second Am. Compl., ECF No. 11 (Feb. 3, 2020).

In an Initial Review Order dated May 8, 2020, the Court dismissed the Second Amended Complaint without prejudice to refiling another amended complaint that alleged how the named defendants were personally involved in the use of excessive force.  Initial Review Order, ECF No. 12 at 8 (May 8, 2020).

On May 22, 2020, Mr. Kerr filed an amended complaint ("Third Amended Complaint") against Deputy Warden Roach, Warden Mulligan, Lieutenant Delpeschio, Captain Ogando, Lieutenant Quintana, Correctional Treatment Officer Fiore, and Correction Officers Stone, Thomas, Tyler, Powell, Tanski, Sartori, Faurier, and Rockcliffe.  Mr. Kerr seeks damages, a declaratory judgment, and an injunction.[1] Third Am. Compl., ECF No. 13 (May 22, 2020).

The Court has reviewed the allegations in the Third Amended Complaint in accordance with 28 U.S.C. § 1915A.

For the following reasons, the Court will permit Mr. Kerr's Fourteenth Amendment excessive force and medical deliberate indifference claims to proceed beyond initial review.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Factual Allegations**[2]

On March 1, 2019, Mr. Kerr allegedly had an altercation with another inmate during lunch, which prompted Officers Fiore, Thomas, Tyler, Faurier, Tanski, Powell, and Stone to respond. Third Am. Compl. ¶¶ 19, 21. Officers Powell, Tyler, and Fiore allegedly secured Mr. Kerr.  *Id.* ¶ 21.  After Mr. Kerr allegedly had been tackled to the ground by the responding

---

[1] Mr. Kerr has alleged that he is suing defendants in their individual and official capacities. *Id.* ¶ 18.

[2] All factual allegations are drawn from the Third Amended Complaint, which is now the operative complaint. Third Am. Compl.

officers, he allegedly lay with his face down with his hands cuffed behind his back and allegedly ceased all aggressive behavior. *Id.* ¶¶ 22, 23. All responding officers allegedly stood around Mr. Kerr, who allegedly had been compliant. *Id.* ¶ 23.

Although allegedly compliant and lying face down and handcuffed, Lieutenant Delpeschio, who arrived later on the scene, allegedly sprayed Mr. Kerr with a chemical agent. *Id.* ¶¶ 24–26. Unit staff allegedly neglected to video record the pepper spraying incident. *Id.* ¶ 30. Mr. Kerr allegedly remained on the ground with pepper spray on his face for several minutes without medical attention, and correctional staff then allegedly escorted him to the Restrictive Housing Unit ("RHU"). *Id.* ¶ 27. Mr. Kerr allegedly asked Lieutenant Delpeschio why he had pepper sprayed him, when he had not been resisting. *Id.* Lieutenant Delpeschio allegedly told Mr. Kerr to shut up or he would be sprayed again for resisting. *Id.*

Mr. Kerr allegedly took a shower in the Restrictive Housing Unit, during which his nose allegedly began bleeding. *Id.* ¶ 28. After Mr. Kerr sat for several minutes waiting for medical assistance, medical staff member Graham allegedly arrived; she allegedly stated that the custody staff should have called her first. *Id.* ¶ 29.

After allegedly having been placed in his cell, Mr. Kerr allegedly wrote several request forms and exhausted all administrative remedies, although his claim was allegedly hindered on an administrative level. *Id.* ¶ 30.

### B.   Procedural Background

On June 25, 2019, Mr. Kerr filed a Complaint, Compl., and a motion for leave to proceed *in forma pauperis*, Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2 (June 25, 2019).

On June 28, 2019, Magistrate Judge William I. Garfinkel granted Mr. Kerr's motion to proceed *in forma pauperis*. *See* Order, ECF No. 7 (June 28, 2019).

On July 19, 2019, Mr. Kerr filed an Amended Complaint. Am. Compl.

On February 3, 2020, Mr. Kerr filed a Second Amended Complaint. Second. Am. Compl.

On May 8, 2020, the Court issued an Initial Review Order, dismissing Mr. Kerr's Second Amended Complaint, but permitting him to file an amended complaint by July 10, 2020. Initial Review Order at 7–8.

On May 22, Mr. Kerr filed a Third Amended Complaint. Third Am. Compl.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555,

570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual

allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation

of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless

distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and

unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and

interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d

399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–

02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

The Court construes Mr. Kerr's Third Amended Complaint as alleging deliberate

indifference to his medical needs based on the failure to properly treat him after his exposure to

the chemical agent on March 1, 2019, and an excessive use of force (or failure to intervene to

prevent the excessive force), in violation of his Fourteenth and Eighth Amendment rights.

Because Mr. Kerr was a pretrial detainee[3] at the time of the alleged violations, his claims are

---

[3] State judicial records show that Mr. Kerr was arrested on April 16, 2018 on several charges, pled guilty on November 14, 2019, and was sentenced on January 23, 2020. *State v. Kerr*, No. HHD-CR18-0695940-T (Conn.

properly analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

### A.  The Fourteenth Amendment Claim for Excessive Force

In order to state an excessive force claim under the Fourteenth Amendment, a plaintiff "'must show . . . that the force purposely or knowingly used against him was objectively unreasonable.'" *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). "'[O]bjective reasonableness turns on the facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 135 S. Ct. at 2473). The Supreme Court has identified several relevant factors a court may consider in determining the reasonableness or unreasonableness of the force used:

> The relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. The determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019).

Mr. Kerr allegedly had more force used against him than necessary when Lieutenant Delpeschio pepper sprayed him, while he was already in restraints and not resisting. His

---

Super. Ct. Apr. 1, 2019). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The Court may "take judicial notice of relevant matters of public record.").

allegations also suggest that none of the other Defendants, who all allegedly were present as responding officers, attempted to intervene to prevent the use of excessive force.

Accordingly, Mr. Kerr has sufficiently alleged claims of Fourteenth Amendment excessive force or failure to intervene against Lieutenant Delpeschio and Officers Fiore, Thomas, Tyler, Faurier, Tanski, Powell, and Stone.

**B. The Fourteenth Amendment Claim for Deliberate Indifference to Medical Needs**

To prevail on a claim that correction officials acted with deliberate indifference to safety or medical needs, a plaintiff:

> must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Taylor v. City of N. Y.*, No. 3:16-CV-7857 (NRB), 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (quoting *Darnell*, 849 F.3d at 35); *see also Garcia v. Univ. of Conn. Health Care Ctr.*, No. 3:16-CV-852 (JCH), 2018 WL 5830840, at *9 (D. Conn. Nov. 7, 2018).

Mr. Kerr alleges having to wait for medical attention after his nose started bleeding during his decontamination shower, because the responding officer defendants and Lieutenant Delpeschio failed to timely call medical staff.

Construing Mr. Kerr's allegations most broadly, the Defendants failed to contact the medical staff immediately after the incident and thus, failed to act with reasonable care to mitigate the injuries posed by Mr. Kerr's exposure to a chemical agent, despite the defendant officers' awareness of that risk. *See Taylor v. City of N. Y.*, No. 3:16-CV-7857 (NRB), 2018 WL 1737626, at *12.

Accordingly, Mr. Kerr has established plausible claims of medical deliberate indifference against Lieutenant Delpeschio and Officers Fiore, Thomas, Tyler, Faurier, Tanski, Powell, and Stone.

### C.  Personal Involvement Supervisory Liability

A plaintiff cannot sue a defendant for damages solely because of his supervisory position. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). He may only recover damages against a supervisory official by showing that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (listing the same methods to demonstrate supervisory liability). In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury).

Mr. Kerr has named as defendants Deputy Warden Roach, Warden Mulligan, Captain Ogando, Lieutenant Quintana, Correction Officer Sartori, and Correction Officer Rockcliffe, but

the Third Amended Complaint contains no allegations indicating how any of these defendants were involved in the incident on March 1, 2019.[4]

Mr. Kerr cannot hold a defendant liable for an award damages without alleging that defendant's personal involvement in the asserted constitutional violation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (a defendant's personal involvement in an alleged constitutional violation is a prerequisite to hold a defendant liable for an award of damages under § 1983). Thus, the Court will dismiss the claims against Correction Officers Sartori and Rockcliffe, who are not plausible supervisory defendants.

Because Mr. Kerr also has not alleged how any of the supervisory defendants were personally involved in the alleged constitutional violation or their awareness of any constitutional violation of Mr. Kerr's rights, all of Mr. Kerr's claims against Deputy Warden Roach, Warden Mulligan, Captain Ogando, and Lieutenant Quintana will be dismissed as not plausible under 28 U.S.C. § 1915A(b)(1).

### D. Administrative Remedies

Mr. Kerr alleges hindrance of his claims on an administrative level. Mr. Kerr, however, cannot premise a constitutional violation on alleged improper handling of his administrative remedies.

"[I]nmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and quotation marks omitted). "Inmates have no

---

[4] Mr. Kerr alleges that he believes that "the defendants named were staff who responded to this incident." Third Am. Compl. ¶ 20. This allegation appears to refer to the Defendants named in paragraph 21. But Mr. Kerr has not alleged any conduct by Deputy Warden Roach, Warden Mulligan, Captain Ogando, Lieutenant Quintana, Correction Officer Sartori, or Correction Officer Rockcliffe so as to hold them liable under section 1983.

constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at \*5 (D. Conn. Jan. 10, 2020) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'")).

Because the grievance procedures, in and of themselves, do not create enforceable constitutional rights for Mr. Kerr, *see Schlosser*, 2020 WL 127700, at \*5, this claim will be dismissed as not plausible under 28 U.S.C. § 1915A(b).

### E. Official Capacity Claims

The United States Supreme Court has recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Ex parte Young*, 209 U.S. 123, 155–56 (1908). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

This exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Mr. Kerr seeks injunctive and declaratory relief against all defendants in their official capacities.[5] Mr. Kerr seeks to enjoin the Defendants from further misconduct, not to remedy an ongoing violation of his rights. Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Moreover, "an injunction [must] be 'more specific than a simple command that the defendant obey the law.'" *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting *City of N. Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)). But Mr. Kerr has failed to allege a plausible claim for injunctive relief.

To the extent that Mr. Kerr seeks a declaratory judgment that his rights were violated in the past, the Eleventh Amendment limitation on the Article III power of federal courts prevents this court from ordering retrospective relief against the Defendants in their official capacities. *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

Accordingly, Mr. Kerr's request for a declaratory and injunctive relief will be dismissed from this lawsuit under 28 U.S.C. § 1915A(b).

## ORDERS

(1) The case shall proceed against Lieutenant Delpeschio, Correctional Treatment Officer Fiore, and Correction Officers Thomas, Tyler, Faurier, Tanski, Powell, and Stone in their

---

[5] Any claims for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

individual capacities on Mr. Kerr's Fourteenth Amendment excessive force and medical deliberate indifference claims. All other claims are **DISMISSED**.

(2) The Clerk of Court shall verify the current work addresses Lieutenant Delpeschio, Correctional Treatment Officer Fiore, and Correction Officers Thomas, Tyler, Faurier, Tanski, Powell, and Stone (who are alleged to have been employees at MacDougall-Walker Correctional Institution on March 1, 2019) with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **August 28, 2020**, and report on the status of the waiver request by **September 11, 2020**.

If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, by **October 9, 2020**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **February 5, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **March 5, 2021**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)  If Mr. Kerr changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Kerr must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Kerr has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Mr. Kerr shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Kerr is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of August, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE