## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUSTIN KERR,<br>    *Plaintiff*,<br><br>    v.<br><br>LIEUTENANT DELPESCHIO,<br>CORRECTIONAL TREATMENT OFFICER<br>FIORE, and CORRECTIONAL OFFICERS<br>THOMAS, TYLER, FAURIER, TANSKI,<br>POWELL, and STONE, in their individual<br>capacities,<br>    *Defendants.* | No. 3:19-cv-988 (VAB) |

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Austin Kerr ("Plaintiff") has sued Lieutenant DelPeschio, Correctional Treatment Officer
Fiore, and Correctional Officers Thomas, Tyler, Faurier, Tanski, Powell, and Stone (collectively,
"Defendants"). Mr. Kerr asserts claims for excessive force, failure to intervene, and deliberate
indifference under 42 U.S.C. § 1983. *See* Third Am. Compl. at 3, ECF No. 13 (May 22, 2020)
("Third Am. Compl.").

Defendants have moved for summary judgment on Plaintiff's Third Amended Complaint,
in its entirety. *See* Mot. for Summ. J., ECF No. 69 (Apr. 27, 2023) ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED** as
to Plaintiff's claims for failure to intervene and deliberate indifference to his medical needs.

Summary judgment is **DENIED** as to Plaintiff's claim against Defendant DelPeschio for
excessive force.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

On March 1, 2019, while incarcerated at MacDougall Walker Correctional Institution, Mr. Kerr allegedly became involved in a fight with another inmate in the A-1 Unit. Defendants' Rule 56(a)(1) Statement of Material Facts ¶ 1, ECF No. 69-1 (Apr. 27, 2019) ("Def. SMF"); Plaintiff's Response to Defendants' Statement of Material Facts ¶ 1, ECF No. 70-1 (May 26, 2023) ("Pl. SMF"). The fight allegedly occurred around 10:55 a.m. Def. SMF ¶ 13; Pl. SMF ¶ 13. Both Mr. Kerr and the other inmate were physically aggressive and threw punches. *Id.*

A correctional officer responded to the scene and called a facility code, which prompted other officers to respond, as well. Def. SMF ¶¶ 3–4; Pl. SMF ¶¶ 3–4. The officers verbally ordered both Mr. Kerr and the other inmate to stop fighting. Def. SMF ¶ 5; Pl. SMF ¶ 5. The inmates did not stop fighting and had to be physically separated by correctional officers. Def. SMF ¶¶ 6–7; Pl. SMF ¶¶ 6–7.

At some point during the incident, Lieutenant DelPeschio entered the unit and deployed a single burst of chemical agent near or at Mr. Kerr's face. Def. SMF ¶ 10; Pl. SMF ¶ 10; Defendants' Reply Memo. in Support of Mot. for Summ. J. at 1, ECF No. 71 (June 7, 2023) ("Reply").

After the chemical agent was used, Mr. Kerr cooperated with the correctional officers and allowed the staff to place him in restraints. Def. SMF ¶ 11; Pl. SMF ¶ 11.

Correctional staff took Mr. Kerr to the Restrictive Housing area, where, around 10:59 a.m., he was placed under a shower for purposes of decontamination from the use of the chemical agent. Def. SMF ¶¶ 12–14; Pl. SMF ¶¶ 12–14. At some point during the shower, Mr.

---

[1] The factual summary is based on a review of the pleadings, the Local Rule 56 Statements, and exhibits accompanying the filings of the parties.

Kerr's nose began to bleed. Pl. SMF ¶ 14.

After the shower, correctional staff took Mr. Kerr to a room for medical treatment. Def. SMF ¶ 16; Pl. SMF ¶ 16. Around 11:03 a.m., Lieutenant DelPeschio informed Mr. Kerr that medical staff were attending to the other inmate involved in the fight. Def. SMF ¶ 17; Pl. SMF ¶ 17.

Around 11:08 a.m., a medical representative attended to Mr. Kerr. Def. SMF ¶ 18; Pl. SMF ¶ 18. Mr. Kerr alleges that the medical representative stated that correctional officers should have called her to treat him first, given the severity of his injuries. Pl. SMF ¶ 18. Mr. Kerr refused additional medical treatment. Def. SMF ¶ 19; Pl. SMF ¶ 19.

After March 1, 2019, Mr. Kerr did not request any additional medical treatment for any injuries allegedly sustained during the incident. Def. SMF ¶ 21; Pl. SMF ¶ 21.

### B. Procedural History

On June 25, 2019, Mr. Kerr filed a *pro se* Complaint against Defendants Hines, Ogandi, Black, DelPeschio, and Stone, alleging that correctional staff wrongly used pepper spray against him while breaking up a fight between him and another inmate on March 1, 2019. Compl., ECF No. 1.

On July 19, 2019, Mr. Kerr filed an Amended Complaint, which included exhibits but did not contain any factual allegations. Am. Compl., ECF No. 8.

On February 3, 2020, Mr. Kerr filed another Amended Complaint, alleging additional facts concerning the incident on March 1, 2019 and naming several new Defendants (Roach, Mulligan, Quintana, Fiore, Thomas, Tyler, Powell, Tanski, Sartori, Fourier, and Rockcliffe). Second Am. Compl., ECF No. 11.

On May 8, 2020, the Court issued an Initial Review Order dismissing the Second

Amended Complaint and granting Mr. Kerr leave to file another Amended Complaint with allegations regarding the personal involvement of each individual defendant in the March 1, 2019 incident. Initial Review Order, ECF No. 12.

On May 22, 2020, Mr. Kerr filed a third Amended Complaint. Third Am. Compl.

On August 7, 2020, the Court issued a second Initial Review Order allowing the case to proceed on Fourteenth Amendment excessive force and deliberate indifference claims against Defendants DelPeschio, Fiore, Thomas, Tyler, Faurier, Tanski, Powell, and Stone in their individual capacities. Initial Review Order, ECF No. 14.

On June 28, 2022, the Court appointed pro bono counsel for Mr. Kerr. Order, ECF No. 60.

On April 27, 2023, Defendants moved for summary judgment as to the entirety of the Third Amended Complaint. Mot.

On May 26, 2023, Mr. Kerr filed a memorandum in opposition to the motion for summary judgment. Memo. in Opp. to Mot. for Summary J., ECF No. 70 ("Opp.").

On June 7, 2023, Defendants filed a reply in response to the memorandum in opposition to the motion for summary judgment. Reply.

## II.      STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation

omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [their] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    DISCUSSION

Defendants seek summary judgment on Mr. Kerr's Third Amended Complaint in its entirety. They argue that Defendant DelPeschio's use of pepper spray was objectively reasonable and not an excessive use of force; that the other Defendants had no opportunity or obligation to intervene, due to the timing of the incident and the fact that the use of pepper spray did not

constitute a constitutional violation; that there was no delay in the provision of medical care that could constitute deliberate indifference to Mr. Kerr's medical needs; and that Defendants are entitled to qualified immunity.

The Court addresses each argument in turn.

### A.  Legal Framework

#### a.  Section 1983

Mr. Kerr has advanced claims against various prison officials under 42 U.S.C. § 1983. Section 1983 provides a private right of action against state and local government officials for constitutional violations:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted).

#### b.  Excessive Force and Deliberate Indifference Claims Under the Fourteenth Amendment

Mr. Kerr has advanced claims of excessive force and deliberate indifference to medical need. Because he was a pretrial detainee at the time of the alleged violations, *see* Third Am. Compl. ¶ 3, his claims are properly analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Eighth Amendment jurisprudence does not control the standard for such claims under the Fourteenth Amendment. A pretrial detainee's rights are "at least as great as the Eighth

Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Yet, the Second Circuit has emphasized that, "[t]he language of the two Clauses differs, and the nature of the claims often differs." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). "Pretrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (citations omitted), *rev'd on other grounds sub nom. by Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, there is no need, in cases involving pretrial detainees, to determine when a given punishment becomes unconstitutional. *Kingsley*, 576 U.S. at 400. Most importantly, when advancing excessive force and deliberate indifference claims under the Due Process Clause, as Mr. Kerr does here, pretrial detainees need not prove the subjective *mens rea* prong of the analysis under the Cruel and Unusual Punishment Clause. *Darnell*, 849 F.3d at 34–35. In both contexts, pretrial detainees must prove only that the use of force, imposed condition, or failure to act was objectively unreasonable. *Id.* at 35–36; *Kingsley*, 576 U.S. at 396–97.

### B.  The Excessive Force Claim

In order to state an excessive force claim under the Fourteenth Amendment, a plaintiff "must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. This standard is fact-specific and is "not subject to mechanical application[.]" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). Rather, "objective reasonableness turns on the facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 396–97.

Courts are directed to consider the perspective of a reasonable officer on the scene at the time of the incident, including what that officer knew at the time, avoiding the "20/20 vision of

hindsight." *Id.*; *Graham v. Connor*, 490 U.S. 386, 396 (1989). The following factors, although not exhaustive, bear on the reasonableness or unreasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

"Not every malevolent touch by a prison guard gives rise to a federal cause of action[,]" and a *de minimis* use of force will rarely be sufficient to sustain an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). Yet, although some degree of injury is usually required, Mr. Kerr need not prove that he suffered a significant injury in order to sustain a claim for use of excessive force. *Id.* at 34 ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.").

The use of pepper spray "has a variety of incapacitating and painful effects" and "its use constitutes a significant degree of force." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010). As a result, the Second Circuit, as well as a number of other Circuits, have held that pepper spray "should not be used lightly or gratuitously" against an arrestee, especially when they are complying with commands and pose no immediate threat to the officer. *Id.*; *see also Henderson v. Munn*, 439 F.3d 497, 502–03 (8th Cir. 2006); *Vinyard v. Wilson*, 311 F.3d 1340, 1348–49 (11th Cir. 2002); *Headwaters Forest Def. v. Cty. of Humboldt*, 276 F.3d 1125, 1128–30 (9th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). This reasoning also extends to the prison context. *Alston v. Daniels*, No. 15-cv-669 (CSH), 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015) ("In the Second Circuit, a prison guard's use of a chemical agent . . . on an

inmate may, under certain circumstances, constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment.").

Defendants argue that Lieutenant DelPeschio's use of pepper spray was objectively reasonable and therefore did not violate the Fourteenth Amendment. In support, Defendants cite Department of Correction Administrative Directive 6.5, which states that a chemical agent may be used when: (1) there is an active threat posed by an inmate, including "active aggression, presence of weapons, known history of assaultive behavior, [or] inmate's non-compliance with lawful orders," (2) there is a risk of potential injury to staff or an inmate, and (3) an inmate continues to refuse to comply with a direct order. Mem. at 8; Conn. Dep't of Corr. Adm. Dir. 6.5, ECF No. 69-3 (Apr. 27, 2023) ("AD 6.5"). Defendants claim that Lieutenant DelPeschio's use of the pepper spray complied with this policy because the situation involved all three of the factors: Mr. Kerr was combative, he refused to allow himself to be restrained, and he therefore posed a potential threat to other inmates and correctional staff. Mem. at 7–8. Finally, Defendants emphasize that Lieutenant DelPeschio used only a single burst of the chemical agent, which was effective at getting Mr. Kerr to comply with orders and did not result in any significant injury. Mem. at 8.

In response, Mr. Kerr advances two arguments. First, he claims that "there is a genuine issue of material fact as to whether Defendant DelPeschio gave [Mr. Kerr] a verbal command prior to the deployment of the chemical agent," which Mr. Kerr claims is a requirement of AD 6.5. Pl. Opp. at 5–6. Mr. Kerr also argues that there exist genuine issues of material fact as to whether Mr. Kerr was actively resisting restraint, whether he posed an immediate threat to others, and whether Lieutenant DelPeschio's use of the chemical agent was necessary or

objectively reasonable. *Id.* at 6–7.

Defendants reply that the uncontroverted facts and the surveillance video evidence establish that Lieutenant DelPeschio's use of the pepper spray was objectively reasonable and did not violate Mr. Kerr's constitutional rights. Reply at 1. They further argue that the issue of whether Lieutenant DelPeschio issued a verbal order before the use of the chemical agent is not material, and they dispute Plaintiff's reading of AD 6.5. *Id.* at 2–3.

The Court agrees, in part.

The issue of whether Lieutenant DelPeschio gave a verbal command is not, in and of itself, a material fact. As noted by Defendants, AD 6.5 states that a correctional officer must issue a verbal warning to an inmate before a planned use of physical force. AD 6.5 § 5(b). Given that Mr. Kerr has not disputed that Lieutenant DelPeschio's use of pepper spray in this instance was unplanned, Section 5(b) does not apply to this situation. Moreover, AD 6.5 makes clear that when the use of physical force is spontaneous or in response to an ongoing incident that presents an ongoing threat of harm to other inmates and correctional officers, there is no analogous requirement to warn the inmate. In fact, AD 6.5 lays out the following general principles: (1) "A Department employee may use physical force on an inmate to maintain discipline, order, safety and security while in the performance of the employee's official duties" and (2) "Staff may immediately use force and/or apply restraints when an inmate's behavior constitutes an immediate threat to self, others, property, order or the safety and security of the facility." Under these provisions, it is clear that there was no policy explicitly requiring Lieutenant DelPeschio to issue a verbal order or warning prior to using the chemical agent on Mr. Kerr.[2]

The Court, however, agrees with Mr. Kerr that there remain genuine issues of material

---

[2] The Court also disagrees with Plaintiff's assertion that "Connecticut caselaw . . . mandates that whether or not a corrections officer verbally commanded an inmate to stop before applying force is a genuine issue of material fact."

fact regarding the reasonableness of Defendant DelPeschio's use of the pepper spray—and this

determination may be influenced by the question of whether Lieutenant DelPeschio issued any

verbal commands or warnings. Although the incident in question was captured on video, as noted

by Defendants, due to the poor quality and the distance from which the video was taken, as well

as the lack of sound, the exact sequence of events is not clear. There are meaningful

discrepancies between the accounts offered by the parties, such as the exact nature of verbal

commands and warnings issued by correctional officers, including Lieutenant DelPeschio;

whether Mr. Kerr was actively resisting restraint when Lieutenant DelPeschio discharged the

pepper spray; and whether Mr. Kerr was sufficiently restrained by the officers holding him

down, so as to eliminate any chance of his harming another inmate or a correctional officer.

There is no record evidence that resolves these outstanding factual questions, and, taken

together, the Court finds that these contested facts are material. A reasonable jury could find that

Lieutenant DelPeschio's use of the chemical agent constituted an excessive use of force in

violation of the Fourteenth Amendment. *See Tracy*, 623 F.3d at 98–99 (reversing the district

court's grant of summary judgment because "if a jury credited [the plaintiff's] version of events

and determined that [the defendant] applied pepper spray after [the plaintiff] had already been

handcuffed and was offering no physical resistance of police commands, it might well conclude

that the use of that pepper spray was unreasonable under the circumstances."); *Knight v. City of*

*New York*, No. 16-cv-7888 (RJS), 2019 WL 95480, at *5 (holding that, since *Tracy*, no

---

Pl. Opp. at 5. In the single case cited, *Alvarez v. City of New Britain*, police officers stopped the plaintiff outside of
his home and, allegedly without any provocation, tackled him from behind, forcibly brought him to the ground, and
struck him repeatedly on the head and torso, eventually breaking and dislocating his elbow. No. 3:19-cv-723 (VLB),
2019 WL 4193069, at *1 (D. Conn. Sept. 15, 2025). In that case, the court held that one genuine issue of material
fact, among others, was "whether [the defendant] ordered [the plaintiff] to stop either by a verbal command or by
taking hold of his jacket to prevent his movement with sufficient time for him to comply before forcing him to the
ground." *Id.* at *5. Apart from the fact that a single, unreported case from this district does not establish a "mandate"
controlling the outcome in this case, the context and nature of the physical force used by police officers in *Alvarez*
distinguish that case from the circumstances here.

reasonable officer could believe that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee); *Girbes-Pierce v. City of New York*, 16-CV-7510 (JLC), 2019 WL 1522631, at \*6–7 (S.D.N.Y. Apr. 9, 2019) (finding that, where the plaintiff was pepper sprayed after he had been physically restrained by two officers pinning him to the ground with their weight, and where he was not resisting, the use of pepper spray was not objectively reasonable, despite the fact that the plaintiff was not yet handcuffed).

Accordingly, the Court will deny the motion for summary judgment on Mr. Kerr's excessive force claim.

### C.  The Failure to Intervene Claim

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). In order to sustain a claim for failure to intervene, a plaintiff must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene[.]" *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 Fed. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation and quotation omitted).

"Liability hinges on whether an officer 'permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known[.]'" *Ramos v. Town of East Hartford*, No. 3:16-cv-166 (VLB), 2019 WL 2785594, at \*11.

(D. Conn. July 2, 2019) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). Accordingly, if the underlying constitutional violation is not sustained, the failure to intervene claim will necessarily fail. *Id.*

Additionally, temporal considerations may impact the viability of a claim of failure to intervene. *See, e.g.*, *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (holding that an incident involving three blows struck in rapid succession offered "no realistic opportunity to attempt to prevent them" and was thus "not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."); *id.* (finding that "the events evolved so rapidly and the officers were in such close proximity to one another and to [the defendant], no reasonable jury could find that any of the officers had an opportunity to anticipate, prevent or stop the force used by the others."); *Sash v. United States*, 674 F. Supp. 2d 531, 545 (S.D.N.Y. 2009) (finding that "no reasonable jury could conclude that [the defendant] had a genuine opportunity to intercede" where the entire incident took less than thirty seconds).

Defendants argue that there can be no viable failure to intervene claim because: (1) Defendant DelPeschio's use of the chemical agent did not violate Mr. Kerr's constitutional rights, and (2) "due to the timing of the events, it is obvious that none of the other correctional officers present had a 'realistic opportunity to intervene' in the use of the chemical agent." Mem. at 9.

Mr. Kerr argues that "there is a significant factual ambiguity as to whether correctional officers surrounding Lieutenant DelPeschio had sufficient time to intervene." Opp. at 9. He further asserts that the poor video quality along with the lack of body camera footage means that "the specific incident from which this lawsuit stems . . . is conveniently not captured on video."

14

*Id.*

The Court disagrees.

Although Plaintiff claims that there is ambiguity as to whether there was sufficient time for Defendants to intervene in Lieutenant DelPeschio's use of the pepper spray, the surveillance video clearly shows that the entire interaction between Lieutenant DelPeschio and Mr. Kerr occurred in under 10 seconds. *See* DOC Videos, ECF No. 69-6 (Apr. 27, 2023) (filed manually with the Court); Deposition of James DelPeschio, Ex. B to Opp., ECF No. 70-3 (May 26, 2023). Although the video is, admittedly, low-resolution, it unambiguously shows that, during the few seconds between Defendant DelPeschio's arrival in the unit and his deployment of the chemical agent, the other officers were actively involved in restraining Mr. Kerr and the other inmate and restoring order in the unit. Based on the caselaw in this Circuit, and the undisputed video record of the incident, no jury could find that there was a "realistic opportunity [for the other Defendants] to intervene and prevent the harm[.]" *Jean-Laurent*, 540 F. Supp. 2d at 512; *see, e.g., Sash*, 674 F. Supp. 2d at 545 ("no reasonable jury could conclude that [the defendant] had a genuine opportunity to intercede" where the entire incident took less than thirty seconds).

Accordingly, the Court will grant summary judgment to Defendants on the failure to intervene claim.

### D.  The Deliberate Indifference Claim

"[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive

risk to health or safety." *Darnell*, 849 F.3d at 35. As described above, there is no *mens rea* component to this analysis: "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.*

When the deliberate indifference claim is based on an alleged delay in treatment, courts generally focus on the effect of that delay on the prisoner's medical condition. *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." (quoting *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998))); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188–89 (11th Cir. 1994) (the seriousness of a delay in medical treatment may be decided "by reference to the effect of delay in treatment . . . . [c]onsequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay"), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002).

Defendants argue that there is no viable claim for deliberate indifference to medical needs because "the defendants acted very promptly in getting the plaintiff decontaminated and arranging for him to be seen by medical." Mem. at 11. They further note that Mr. Kerr was decontaminated and seen by medical staff within thirteen minutes of the fight, and that during that brief intervening period, the medical representative was attending to the other inmate involved in the fight. *Id.*

Mr. Kerr argues that correctional officials did not properly clean the chemical agent from

his face during the decontamination shower; that the nurse who attended to him exclaimed that he should have been seen sooner, due to the severity of his injuries; and that he did not receive adequate medical care following the incident. Opp. at 10–11.

The Court disagrees.

Mr. Kerr has not disputed the material facts related to his deliberate indifference claim. The fight between Mr. Kerr and the other inmate occurred at 10:55 a.m. Def. S.M.F. ¶ 13; Pl. S.M.F. ¶ 13. He was sprayed with a single bust of chemical agent as he was being physically separated by from the other inmate. Def. S.M.F. ¶¶ 7, 10; Pl. S.M.F. ¶¶ 7, 10. Around 10:59 a.m., Mr. Kerr was placed in the decontamination shower and was allowed to remain there until he told the correctional officer that "he is good." Def. S.M.F. ¶¶ 14–15; Pl. S.M.F. ¶¶ 14–15. At 11:08 a.m., Mr. Kerr was seen by a medical representative and refused medical treatment. Def. S.M.F. ¶¶ 18–19; Pl. S.M.F. ¶¶ 18–19. Mr. Kerr did not subsequently request any medical attention for injuries sustained during this incident. Def. S.M.F. ¶ 21; Pl. S.M.F. ¶ 21.

Mr. Kerr alleges that his face was not cleaned properly during the decontamination shower and that his face began bleeding while he was in the shower. Pl. Mem. at 10. Indeed, the video does show that Mr. Kerr's nose was bleeding when he emerged from the shower. Mr. Kerr does not dispute the fact, however, that he was brought to the shower promptly (within four minutes of the fight and deployment of the chemical agent), or that correctional staff allowed him to remain in the shower until he confirmed that he was "good." In fact, he has not alleged any facts to suggest that his facial bleeding was a result of a deficient decontamination shower, as opposed to a typical side effect of the use of the chemical agent. On this record, there are no facts to suggest that the decontamination shower constituted deliberate indifference to Mr. Kerr's medical needs. *See Evans v. Bonner*, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (finding that the

17

alleged untimely dispensing of an inmate's medication did not constitute deliberate indifference to his serious medical needs in violation of the Eighth Amendment, where the failure to give the plaintiff his medications on time caused no serious injury to him); *Llorente v. Rozeff*, No. 99-cv-1799, 2001 WL 474261, at *4 (N.D.N.Y. April 12, 2001) (finding that the delay in treatment of plaintiff's ear injury did not constitute a constitutional violation, where the record did not establish any detrimental effect of the delay in medical treatment).

As to the alleged delay in medical treatment, a medical representative saw Mr. Kerr within thirteen minutes of the use of pepper spray, and he has not disputed that the nurse was delayed because she was treating the other inmate involved in the fight. Mr. Kerr contends that the nurse exclaimed upon seeing his injuries that he should have received medical attention sooner, given their severity. This alleged statement is not audible in the video recording provided to the Court. But, even accepting this factual allegation as true, Mr. Kerr did not accept any medical treatment from the nurse; in fact, he is shown on video repeatedly telling her that he was "good." He does not dispute that he failed to seek medical care subsequently, or that he did not sustain any lasting injuries from the incident.

On this record, there are no facts to sufficient to suggest that any alleged delay in Mr. Kerr's medical treatment caused any harm. *Smith*, 316 F.3d at 186 ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."); *Hill.*, 40 F.3d at 1188 (a plaintiff seeking to show that a "delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."). Similarly, on this record, there is no genuine issue of material fact as to whether any Defendant "recklessly failed

to act with reasonable care to mitigate the risk" that his medical condition posed, nor that this medical condition "posed an excessive risk to [his] health or safety." *Darnell*, 849 F.3d at 35.

Accordingly, the Court will grant summary judgment to Defendants on Mr. Kerr's deliberate indifference to his medical needs claim.

### E.  Qualified Immunity

Qualified immunity is intended to shield public officials from liability from civil damages when their actions were objectively reasonable in light of clearly established legal rules. *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002). Courts must be careful to "evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and are required to "make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See Tracy*, 623 F.3d at 96.

At the summary judgment stage, courts perform a two-pronged inquiry when deciding questions of qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The first prong addresses the threshold inquiry of whether the plaintiff has alleged a violation of federally protected rights. *Naumovski v. Norris*, 934 F.3d 200, 211 (2d Cir. 2019) (quoting *Kelsey v. Cty. of Schoharie*, 567 F.3d 54, 61 (2d Cir. 2009) (internal quotation marks omitted)). The second prong asks whether that right was clearly established at the time of the violation. *Tolan*, 572 U.S. at 655–56. More specifically, the Second Circuit has held that a state official sued in their individual capacity for damages arising out of their performance of discretionary functions is entitled to qualified immunity if they can demonstrate that: (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their action

did not violate such law. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998); *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The first prong of the inquiry is addressed in the previous section. This section will therefore address only Mr. Kerr's excessive force claim, the only one which survived the analysis above.

In the Second Circuit, it is clearly established that the use of pepper spray against a restrained and cooperative individual constitutes excessive force. *Tracy*, 623 F.3d at 99 n.5 (2d Cir. 2010) ("we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee"); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 669 (E.D.N.Y. 2017). Courts in this Circuit have generally granted qualified immunity to officers who used pepper spray against individuals actively resisting or posing a threat to officers. *See, e.g.*, *Brown v. City of New York*, 862 F.3d 182, 189–92 (2d Cir. 2017) (granting qualified immunity to officers who used pepper spray on an arrestee who refused to place her hands behind her back, where the officers warned her before each use of pepper spray); *McNight v. Vasile*, No. 11-CV06328P, 2017 WL 1176062, at *28 (W.D.N.Y. Mar. 30, 2017) (finding that officers are entitled to qualified immunity "where an individual is actively resisting arrest and refusing orders, and the scene presents a risk to officer safety").

On the other hand, courts have routinely denied qualified immunity to officers who use pepper spray on individuals who are not actively resisting, or who are already in restraints. *See, e.g.*, *Knight*, 2019 WL 95480, at *5 ("[A]t least since *Tracy*, deploying pepper spray in the face of [an individual] 'already in handcuffs and offering no further active resistance' constitutes a clearly established unreasonable use of force.") (citing *Tracy*, 623 F.3d at 98); *Toliver v. New*

*York City Dep't of Corr.*, 202 F. Supp. 3d 328, 288 (S.D.N.Y. 2016) (declining to find objectively reasonable the defendant's decision to pepper spray the plaintiff while restrained). Courts have additionally found that the use of pepper spray on inmates who are not handcuffed, but are otherwise confined, is not objectively reasonable. *See, e.g.*, *Girbes-Pierce*, 2019 WL 1522631, at *6–7 (finding that, where the plaintiff was pepper sprayed after he had been physically restrained by two officers pinning him to the ground with their weight, and where he was not resisting, the use of pepper spray was not objectively reasonable, despite the fact that the plaintiff was not yet handcuffed); *cf. Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 287 (S.D.N.Y. 2014) (finding that it was not objectively reasonable to use a taser, without warning, against an individual who was restrained on the floor by four officers).

As noted above, there exist genuine issues of material fact regarding whether Mr. Kerr was restrained when Lieutenant DelPeschio deployed the pepper spray and whether he was actively resisting. As a result, on this record, the Court cannot grant summary judgment to Defendant DelPeschio on qualified immunity grounds. *See Jones v. Wagner*, No. 3:20-CV-475 (VAB), 2022 WL 1525134, at *8 (D. Conn. May 13, 2022) ("[A] genuine issue of material fact exists as to whether [the plaintiff] was resisting, and, as a result, although the issue of qualified immunity remains an open issue in this case, summary judgment cannot be granted to [the defendant] at this stage of the proceedings on qualified immunity grounds."); *see also Tolan*, 572 U.S. at 657 ("[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.") (citation omitted).[3]

---

[3] Although the Court dismissed the failure to intervene and the deliberate indifference to medical needs claims above, even if the Court had not on those grounds, given the record in this case and based on the caselaw relied upon above, qualified immunity would have required their dismissal in any event.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's claims for failure to intervene and medical deliberate indifference.

Summary judgment is **DENIED** as to Plaintiff's claim against Defendant DelPeschio for excessive force.


SO ORDERED at New Haven, Connecticut, this 12th day of January, 2024.

<u>/s/ Victor A. Bolden</u>
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE